Calvin E. PARKER et al.,
Plaintiffs-Appellees,

v.

LOCAL UNION NO. 1466, UNITED STEELWORKERS OF AMERICA, AFL–CIO et al., Defendants-Appellants.

No. 79–3976.

United States Court of Appeals, ·Fifth Circuit.

Unit B

April 6, 1981.

Rehearing and Rehearing En Banc Denied May 4, 1981.

Cooper, Mitch & Crawford, John C. Falkenberry, Birmingham, Ala., for defendants-appellants.

Johnston, Barton, Proctor, Swedlaw & Naff, David P. Whiteside, Jr. and Gilbert E. Johnston, Sr., Birmingham, Ala., for plaintiffs-appellees.

Before HILL, FAY and HATCHETT, Circuit Judges.

PER CURIAM:

Defendants-appellants, Local Union 1466, United Steelworkers of America, and three of its officers, appeal a judgment entered by the United States District Court for the Northern District of Alabama. The court awarded Calvin E. Parker, Harold G. Nicholson, and others similarly situated the sum of $34,000 in punitive damages, $1000 in compensatory damages, and nominal class damages [1] for appellants' violation of rights guaranteed by the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 401 et seq. (1976) (LMRDA). Appellants challenge the judgment of the district court on several grounds: 1) insufficiency of evidence to establish a violation of the LMRDA, 2) insufficiency of evidence to support award of punitive damages, 3) award of damages to a class certified for declaratory and injunctive relief, 4) award of damages to named plaintiff Parker against named defendant Hulsey. Finding these challenges to be without merit, we affirm the final judgment of the district court.

In the summer and fall of 1976, Local Union # 1466 (the Union) struck against the Bessimer, Alabama plant of Pullman-Standard. Appellees felt that the membership should have voted on the strike which was called, with the permission of the International Union, by Leonard Lewis, president of the Union. Ralph E. Ethridge, a former Union president, obtained signatures on and submitted three petitions calling for a special meeting "for the specific purpose to hold a secret ballot vote to go back to work and take the issue to arbitration." (R. I, 176).[2]

The Union took the position that no secret ballot could be had unless a majority of the members voted to have such a ballot. At the September 8 meeting, however, the Union leadership failed to maintain order and ridiculed the appellees and other signers of the petition before the membership. The meeting adjourned without a vote of any kind on the secret ballot or the question of going back to work. At a second meeting, held September 29, the leadership again failed to keep order, berated appellees and denied appellees the right to speak. The meeting adjourned. After this meeting, outside the union hall, Arvil Hulsey, treasurer of the Union, threatened Mr. Parker that if anyone crossed the picket lines he would be "mashed on 5th Avenue." (R. II, 93) Mr. Parker's response was that it was a poor union that denied its members the right to speak. Then Mr. Hulsey struck Mr. Parker in the jaw.

In October, 1976, Parker and Nicholson filed the instant action in the district court on behalf of themselves and others similarly situated alleging that the Union and its officers had violated the LMRDA in denying them the right to participate in the Union affairs. In January, 1977, the Union brought disciplinary charges against Nicholson, Parker, and others for "instituting, urging, and advocating action outside the Union against the International Union, Local Union, and its officers." (R. I, 177) The appellees amended their complaint to allege that the Union had violated LMRDA in instituting disciplinary procedures in retaliation for their filing suit.

■■■ We find that there is ample evidence in the record to support the district

1. The final order enumerated damages as follows:
a) Named plaintiffs and class $1.00 each as nominal damages
b) Named plaintiffs and class $34,000 as punitive damages to be paid by defendants as follows:

| | |
|---|---|
| 1) Local Union # 1466 | $25,000 |
| 2) Leonard Lewis, president | 3,000 |
| 3) Louis Pinkard, vice–president | 3,000 |
| 4) Arvil Hulsey, treasurer | 3,000 |

c) Plaintiff Parker as compensatory damages $1,000

d) Attorney fees for plaintiffs $10,000.00

e) Expenses for plaintiffs $ 239.14

2. Ralph E. Ethridge testified that the Union refused to honor his first petition because it was improperly worded. With the help of the International Union, he redrafted it using a constitution given to him by the local union. This one was not honored because it made reference to the wrong constitution. He finally went to another local and got a copy of the constitution in order to draft his third petition. This petition was honored. (R. II, 174–177).

court's finding that the Union had violated the LMRDA.[3] Section 411 protects the rights of individual union members to participate in the internal affairs of the union subject to the reasonable rules and regulations of the organization. Appellants violated provisions in their own by-laws in not confining the special meeting to the purpose for which it was called, that is, to discuss the question of going back to work and taking the matter to arbitration and to hold a secret ballot on that question.[4] Even if we were to accept appellants' argument that there could be no secret ballot because the constitution failed to provide for one and tradition was against it, we could not hold that the petitioning members did not at least have the right to bring that issue before the assembly in an orderly fashion. The overriding issue was whether or not a majority of the members wanted to return to work.

On oral argument before this Court, counsel for appellants admitted that the Union leadership was determined to avoid a secret ballot vote and engaged in parliamentary maneuvers to do so. Counsel also admitted that the meetings were tumultuous and that the dissidents were not recognized. He argued, however, that these actions did not constitute conduct sufficiently "invidious" to justify punitive damages. We disagree. In *International Brotherhood of Boilermakers v. Braswell*, 388 F.2d 193, 199 (5th Cir.), *cert. denied*, 391 U.S. 935, 88 S.Ct. 1848, 20 L.Ed.2d 854 (1968) we held that punitive damages were awardable under the LMRDA if the union acted with "actual malice or reckless or wanton indifference to the rights of the plaintiff." Implicit in section 411's guarantee that "every member . . . shall have equal rights and privileges . . . to participate in the deliberations and voting . . ." is the right to be recognized at meetings and to have those

**3.** 29 U.S.C. § 411 reads, in part:

§ 411. Bill of rights; constitution and bylaws of labor organizations

(a)(1) Equal rights.—Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

(2) Freedom of speech and assembly.—Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided*, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

    \*    \*    \*    \*    \*    \*

(4) Protection of the right to sue.—No labor organization shall limit the right of any member thereof to institute an action in any

court, or in a proceeding before any administrative agency, irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding, or the right of any member of a labor organization to appear as a witness in any judicial, administrative, or legislative proceeding, or to petition any legislature or to communicate with any legislator: *Provided*, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof: *And provided further*, That no interested employer or employer association shall directly or indirectly finance, encourage, or participate in, except as a party, any such action, proceeding, appearance, or petition.

**4.** Article V, § (1)(b) of the Union by-laws provides:

(b) The President shall call special meetings by request of ten members in good standing of the Local Union. This request shall be in writing, shall state clearly the purpose of the meeting and shall be signed by those making such request. Notice of all special meetings must be given the members of the Local Union by bulletin board posting or other reasonable means. The business of the special meeting shall be confined to the purpose for which the meeting was called.

meetings conducted in an orderly fashion. Further, the public ridicule of appellees can only be seen as attempts at intimidation. The Union's admitted disregard of the rights of its members amounts to reckless or wanton indifference to the rights of the members.[5] Appellants' argument that the decision of the United States Supreme Court in *IBEW v. Foust*, 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979) precludes an award of punitive damages is unpersuasive. In that case the majority specifically declined to decide whether the punitive damages could be awarded under the LMRDA and confined its decision to the Railway Labor Act, 45 U.S.C. § 151 *et seq.* (1976) 442 U.S. 42, 47 n.9, 99 S.Ct. 2121, 2125 n.9, 60 L.Ed.2d 698, 704, n.9. Justice Brennan, concurring in the result, noted that our decision in *Braswell* and those of other circuits have held punitive damages to be appropriate under the LMRDA, 29 U.S.C. § 412. *IBEW v. Foust*, 442 U.S. 42, 59, 99 S.Ct. 2121, 2131, 60 L.Ed.2d 698 (1979) (Brennan, J., concurring).

██ Appellants' contention that the trial court erred in awarding damages to a class certified "for purposes of injunctive and declaratory relief," under Fed.R.Civ.P. 23(b)(2) is also meritless. Class certification under Rule 23(b)(2) does not automatically preclude an award of monetary damages when the primary relief sought is injunctive or declaratory. The rule pointedly refers to injunctive or declaratory relief but does not, in terms, preclude monetary relief. *Baxter v. Savannah Sugar Refining Corp.*, 350 F.Supp. 139, 141 (S.D.Ga.1972) *modified on other grounds*, 495 F.2d 437 (5th Cir. 1974); *Robinson v. Lorillard Corp.*, 444 F.2d 791 (4th Cir. 1971); 7A Wright & Miller, *Federal Practice and Procedure* § 1775 (1972); 3B *Moore's Federal Practice* ¶ 23.40(4) (2d ed.); *cf. Franks v. Bowman Transportation Co.*, 495 F.2d 398, 421 (5th Cir. 1974), *modified*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976).

██ Similarly, we find no error in the awarding of damages to appellee Parker against appellant Hulsey, treasurer of the Union. Under the LMRDA a plaintiff may recover all damages directly and proximately resulting from the violation of the Act. *Boilermakers v. Braswell*, 388 F.2d 193, 199 (5th Cir. 1968); *Simmons v. Avisco, Local 713, Textile Workers Union of America*, 350 F.2d 1012 (4th Cir. 1965).

The trial judge having fairly resolved the dispute upon sufficient evidence in the record, we AFFIRM his judgment.

---

5. The trial court also said in its memorandum opinion that appellants had committed the sort of retaliatory action limiting the right to sue that was envisioned by the Congress when it enacted the LMRDA. The opinion clearly discusses the question of exhaustion of remedies in connection with union disciplinary actions, and since at pages 30, 31 of their brief appellants felt it "unnecessary ... to launch into a detailed discussion of the exhaustion of remedies," so do we.