Bernita WASHINGTON, et al.

v.

CSC CREDIT SERVICES,
INC. and Equifax Inc.

No. CIV. A. 97–0971.

United States District Court,
E.D. Louisiana.

March 11, 1998.

Gregory Odom, Dawn Wheelahan, New Orleans, LA, for plaintiffs.

Jeffery Tillery, Amelia W. Koch, Alexander McIntyre, Jr., New Orleans, LA, for defendants.

## ORDER AND REASONS

BERRIGAN, District Judge.

This matter is before the Court on a motion by plaintiffs "to certify a class of all persons whose credit reports have been furnished to an insurance company during the period from April 2, 1995 to the present, by computer access, by defendants CSC Services, Inc., or Equifax Inc., or any of their subsidiaries, or by access to databases owned by any of them," Plaintiffs' Motion to Certify Class, Record Document No. 34, and a Motion for Summary Judgment by Equifax Inc.

Named as representative plaintiffs are Bernita Washington, Kevin Washington, Peggy Malbrough, Roy Malbrough, Jr., Bernice Augustine Guichard, and Vernon Guichard, Jr. It is alleged that defendants, CSC Credit Services, Inc. and Equifax Inc, failed to adopt reasonable procedures to ensure that credit reports were being issued for a permissible purpose in violation of Section 1681e of the Fair Credit Reporting Act, ("FCRA"), 15 U.S.C. § 1681 et seq.

### I. The Fair Credit Reporting Act

#### A. Introduction

The FCRA was enacted in 1970 to ensure that:

consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the con-

sumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter.

15 U.S.C. § 1681(b).[1]

### B. Permissible Purposes

Section 1681b of the FCRA establishes that:

A consumer credit agency may furnish a consumer report under the following circumstances *and no other:* . . .

(2) In accordance with the written instructions of the consumer to whom it relates.

. . .

(3) To a person which it has reason to believe—

(C) intends to use the information in connection with the underwriting of insurance involving the consumer.

(emphasis added) 15 U.S.C. § 1681b(a).

The Federal Trade Commission promulgates rules under this statute. The commentary to those rules reads as follows:

### 2. Claims

*An insurer may not obtain a consumer report for the purpose of evaluating a claim* (to ascertain its validity or otherwise determine what action should be taken), because permissible purposes relating to insurance are limited by this section to "underwriting" purposes.

(emphasis added) 16 C.F.R. Ch. 1, Subchapter F–Statements of General Policy or Interpretation under the Fair Credit Reporting Act (1–1–95 edition)(hereinafter "FTC Commentary"), p. 386.

1. The FCRA was based upon the following Congressional findings:
(1) The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.
(2) An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity,

### C. Reasonable Procedures

Section 1681e(a) of the FCRA states that:

Every consumer reporting agency ·shall maintain reasonable procedures to . . . limit the furnishing of consumer reports to the purposes listed under section 1681b of this title. These procedures shall require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose. Every consumer reporting agency shall make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report. No consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in section 1681b of this title.

15 U.S.C. § 1681e(a).

Elaborating on this provision, the Federal Trade Commission Commentary states:

Section 607—Compliance Procedures

*2. Procedures to Avoid Reporting for Impermissible Purposes*

*B. Required certification by user*

. . . . The user's certification that the report will be used for no other purposes *should expressly prohibit the user from sharing the report or providing it to anyone else,* other than the subject of the report or to a joint user having the same purpose. A consumer reporting agency should refuse to provide reports to those refusing to provide such certification.

character, and general reputation of consumers.
(3) Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.
(4) There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.
15 U.S.C. § 1681(a).

## C. *Blanket or individual certification*

...[I]n furnishing reports to users that typically could have both permissible and impermissible purposes for ordering consumer reports..., *the consumer reporting agency must require the user to provide a separate certification each time it requests a consumer report.*

(emphasis added) 16 C.F.R. Ch. 1, Subchapter F–Statements of General Policy or Interpretation under the Fair Credit Reporting Act (1–1–95 edition), p. 396–97.

## D. Summary

Summarizing the relevant requirements of the FCRA, credit reporting agencies such as defendants are required to maintain reasonable procedures to limit the furnishing of credit reports to permissible purposes. 15 U.S.C. § 1681e(a). In order to comply with this statutory duty with regard to insurance companies, a credit reporting agency:

1) May not furnish credit reports to insurers to the purposes of claims investigations or any purpose not related to underwriting. FTC Commentary at 390.

2) Must obtain certifications from insurance companies to which they make credit reports available which expressly prohibit the insurance companies from sharing the credit reports or providing them to anyone other than the subject of the report or to a joint user having the same purpose. FTC Commentary at 395.

3) Must require the user insurance companies to submit a separate certification for each credit report they obtain. FTC Commentary at 396.

## II. Class Certification

### A. Introduction

■ In deciding whether to certify a class, the court must perform a rigorous analysis of whether the class satisfies Federal Rule of Civil Procedure 23. *General Telephone Co. v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). However, the court may not inquire into the

merits of the underlying case. *Heartland Communications, Inc. v. Sprint Corp.,* 161 F.R.D. 111 (D.Kan.1995). The court must assume that the substantive allegations of the complaint are true[2]. *Krehl v. Baskin–Robbins Ice Cream Co.,* 78 F.R.D. 108 (C.D.Cal.1978).

### B. Rule 23(a)

The prerequisites to class certification are numerosity, typicality, commonality, and fair and adequate representation. Fed.R.Civ.P. 23(a).

Defendants maintain that class certification is inappropriate here because the users of the reports, the insurance companies, have obtained written authorizations from consumers permitting them to obtain the reports. Defendants maintain that any argument that the written authorizations were invalid—because, for example, they were accompanied by verbal or other misrepresentations—would require a fact-specific inquiry that would destroy the commonality, typicality, and perhaps also the numerosity required for the maintenance of a class action.

■ Plaintiffs respond that issue is not whether the users ultimately obtained valid authorizations, but rather whether the defendants maintained reasonable procedures to ensure that users were obtaining those authorizations. Specifically, plaintiffs allege that apart from obtaining an initial blanket certification from the insurance companies, defendants have exercised no oversight over the insurance companies to ensure that the reports are being used for proper purposes. Motion to Certify at 3. They further allege that any written authorizations from the consumers that may have been given to the insurance companies were never transmitted to defendant CSC Credit Services, Inc. Plaintiff's Reply to Opposition of Equifax Inc. to Motion to Certify at 7. Ultimately, plaintiffs contend that it was not reasonable under Section 1691e(a) for defendants to rely solely on the insurance companies' initial assertions

---

**2.** Defendants' contention that plaintiffs must amend their complaint in order to change the definition of the putative class is incorrect. *See*

*Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 183–84, 94 S.Ct. 2140, 2155–56, 40 L.Ed.2d 732 (1974)(Douglas, J., dissenting).

they have authorizations, and that further certifications and safeguards are required.

The Court concurs with the plaintiff's formulation of the issue. A credit reporting agency's duty to maintain reasonable procedures under Section 1691e(a) of the FCRA is separate and distinct from, and independent of, a user's duties, which are addressed in Section 1681m, a different section of the Act. The fact that the user insurance companies may have fortuitously procured authorizations from consumers does not absolve the defendant credit reporting agencies of their duties under Section 1681e(a). As discussed above, those duties include receiving certifications from insurance companies that the reports are not being shared, and also obtaining a certification for every credit report issued to an insurance company. An inquiry into whether defendants have complied with these statutory duties does not require an individualized inquiry into the circumstances surrounding each plaintiff's interaction with each insurance company and, as discussed below, is appropriate for class certification.

### 1. Numerosity

■ For class certification to be appropriate, membership in the class must be so numerous that joinder is impracticable. Fed. R.Civ.P. 23(a). A court may make common sense assumptions as to the size of the proposed class. *Garcia v. Gloor,* 618 F.2d 264 (5th Cir.1980).

Defendants maintain that numerosity may be lacking because the class consists only of those consumers for whom a report was issued in violation of the FCRA. They assert that determining whether a report was issued for improper purposes would require individual determinations. Opposition by Equifax to Plaintiff's Motion to Certify Class at 8 (Record Doc. No. 28).

■ The pertinent question, however, is whether the defendants utilize reasonable procedures with regard to the insurance companies. The class of people affected consists of those consumers whose reports were released under these allegedly improper procedures. Plaintiffs have produced affidavits stating that defendant CSC has furnished the credit reports of approximately 230 consumers to insurance companies, Exhibit 2, Motion to Certify Class (Record Document 34), in alleged violation of the reasonable procedures requirements of the FCRA. Joinder is impracticable for a class with this many members.

### 2. Commonality and Typicality

■ "The commonality and typicality requirements of Rule 23 tend to merge." *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 155, 102 S.Ct. 2364, 2369, 72 L.Ed.2d 740, 749 (1982). Commonality exists "when there is at least one issue the resolution of which will affect all or a significant number of the putative class members." *Lightbourne v. County of El Paso,* 1997 U.S.App. LEXIS 19933 (5th Cir.1997).

■ Here, all plaintiffs claim an identical violation of the FCRA—that the defendants failed to adopt reasonable procedures as required by Section 1691e(a). Resolution of this issue would either change or not change the manner in which plaintiffs' credit reports are distributed, and thus would "affect all or a significant number of the putative class members" and meet the requirements of Rule 23a as delineated by *Lightbourne.*

### 3. Adequacy of Representation

■ Adequacy of representation analysis "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Products v. Windsor,* —— U.S. ——, ——, 117 S.Ct. 2231, 2236, 138 L.Ed.2d 689 (1997).

The named parties and the remaining class members here seek identical relief. As discussed in the section on damages, *infra,* because there are no defenses unique to the representative plaintiffs, the representation is adequate.

### C. Rule 23(b)(2)

Plaintiffs claim relief under Fed.R.Civ.P. 23(b)(2), or in the alternative, under Fed. R.Civ.P. 23(b)(3).

Rule 23(b)(2) allows class actions for declaratory or injunctive relief "where the party opposing the class has acted or refused to

act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2) "Class certification under Rule 23(b)(2) does not automatically preclude an award of monetary damages when the primary relief sought is injunctive or declaratory." *Forbush v. J.C. Penney*, 994 F.2d 1101, 1105, n. 3 (5th Cir.1993), *citing Parker v. Local Union No. 1466*, 642 F.2d 104, 107 (5th Cir.1981) and *Johnson v. General Motors Corp.*, 598 F.2d 432, 437 (5th Cir.1979).

Following an approving citation to *Jones v. Diamond*, 519 F.2d 1090 (5th Cir.1975), which reversed a denial of class certification in a suit seeking compensatory and punitive damages as well as injunctive and declaratory relief, Professor Herbert Newberg states:

> When the parties dispute which form of relief is predominant with respect to the appropriateness of Rule 23(b)(2) for any class certification, it is counterproductive for the court to expend time to try to resolve this largely discretionary question, which does not address the merits of the case. Rather, the court should conclude that when the Rule 23(a) prerequisites are satisfied and declaratory or injunctive relief is sought as an integral part of the relief for the class, then Rule 23(b)(2) is applicable regardless of the presence or dominance of additional prayers for damages relief for class members.

1 Newberg on Class Actions § 4.14 (3d ed.1992).

Plaintiffs seek declaratory and injunctive relief with regard to defendants' failure to maintain reasonable procedures to safeguard plaintiff's credit reports, and also statutory damages as permitted by the FCRA[3]. Defendants contend that plaintiffs are not primarily seeking equitable relief and that therefore a Rule 23(b)(2) action is inappropriate.

 Here, the primary form of relief sought by plaintiffs is equitable. Plaintiffs' predominant claim is for injunctive relief against defendants' allegedly unreasonable procedures, with claims for statutory damages, including punitive damages and attorneys' fees, coming as an incident. While it is true that the FCRA also specifically allows for actual damages, 15 U.S.C. § 1681o(a), based on the affidavits and factual assertions in the record—in particular the defendants' claim, unrebutted by plaintiffs, that most plaintiffs granted authorizations to the insurance companies to procure their reports—the Court finds that compensatory damages are not likely to form a predominant part of the recovery. As such, the relief sought by plaintiffs is primarily equitable.

## III. Damages

 Actual damages need not be proven in an action seeking punitive damages for willful violation of the FCRA. *Casella v. Equifax Credit Information Services*, 56 F.3d 469, 475 (2d. Cir.1995); *cf. Scalise v. National Utility Service*, 120 F.2d 938, 940 ("[i]n Florida, as in the federal courts, the giving of punitive damages is not dependent on, nor must it bear any relation to, the allowance of actual damages.") Moreover, humiliation and distress can constitute actual damages under the FCRA, even if the consumer has suffered no out-of-pocket losses. *Stevenson v. TRW, Inc.*, 987 F.2d 288, 296 (5th Cir.1993) Citing *Pendleton v. Trans Union Systems Corp.*, 76 F.R.D. 192 (E.D.Pa. 1977), defendants contend that some indication of the *fact* of damage, as opposed to the amount of damages or proof of damages, is also required.

 Defendants' attempted distinction is inapposite. In *Pendleton*, plaintiffs sued over inaccuracies in their credit reports. In finding that proof of the "fact of damage" was required, the court noted that "[i]t is important to emphasize that these individual factual determinations enter into proving the

---

3. Plaintiffs' amended complaint states that:
 Plaintiff amends the prayer of her complaint to pray for judgment against defendant Equifax Inc., in addition to her prayer for judgment against CSC, including in her prayer a request for declaratory and injunctive relief pursuant to 28 U.S.C. § 2201, ordering defendants to desist from providing credit reports to insurers in connection with claims investigations.
 Paragraph 8, Plaintiff's Amended Complaint.

defendant's liability, not simply the amount of an individual's damages." *Pendleton* at 194. Here, no individual factual determinations enter into proving defendants' liability, as it hinges solely on whether defendants observed reasonable procedures with regard to insurance companies.

The deeper question, not significantly briefed by either party, is that of constitutional standing. Defendants contend that plaintiffs lack standing because they have suffered no injury in fact. In order to possess standing, a plaintiff must have among other things suffered an injury-in-fact, which has been defined as "an invasion of a legally protected interest" that is "concrete and particularized" and " 'actual or imminent.' " *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992), *quoting Whitmore v. Arkansas,* 495 U.S. 149, 155, 110 S.Ct. 1717, 1723, 109 L.Ed.2d 135 (1990). An interest shared generally with the public at large in the proper application of the Constitution and laws will not do. *See Lujan* at 573–76, 112 S.Ct. at 2143–45.

Unlike the endangered species protection statute in *Lujan,* which granted the right to sue to an unqualified "any person," the FCRA does not create an interest shared generally with the public at large. Rather, it targets a particular class of consumers, and additionally provides a *quid pro quo* by limiting the liability of credit reporting agencies, 15 U.S.C. § 1681h(e), in exchange for the restrictions imposed upon them. Thus the

concern voiced in *Lujan* over permitting the public at large to sue over generalized grievances does not apply.

Moreover, while defendants contend that plaintiffs have not been harmed because the issuance of the reports has not resulted in a denial of credit to the named plaintiffs, the mere issuance of the reports themselves under improper procedures constitutes an invasion of privacy if not under the common law, then at least as contemplated by the FCRA[4]. In an era where information is instantly transmissible and easily shared, and where credit reports can determine a person's access to a wide range of goods and services, having one's credit history released into electronic circulation without reasonable procedures in place to ensure permissible use is cause for sufficient anxiety and invasion of privacy to constitute an injury-in-fact in and of itself.

Alternatively, representative plaintiffs Bernice Augustine Guichard and Vernon Guichard, Jr. have alleged that the credit reports obtained under the procedures in question were used by insurance companies "to embarrass and humiliate claimants, and to induce them to accept inadequate compensation for their claims, or as a basis for denying claims together."[5] Plaintiffs here quite clearly allege an injury-in-fact.

## IV. Statute of Limitations

Defendants contend that the claims of some or all of the claims of the putative class members may be time-barred. The

---

4. "Congress may create a statutory right or entitlement the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of statute." *Warth v. Seldin,* 422 U.S. 490, 513, 95 S.Ct. 2197, 2213, 45 L.Ed.2d 343 (1975).

The FCRA is not solely concerned with damage resulting from inaccurate reports. In the section of the FCRA entitled "Congressional findings and statement of purpose," Congress determined that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the *consumer's right to privacy.*" 15 U.S.C. § 1681(a)(4)(emphasis added). The statute later states that "[i]t is the purpose of this subchapter to require that consumer reporting agencies adopt reasonable procedures for meeting the

needs of commerce for consumer credit, personnel, insurance, and other information with regard for the *confidentiality,* accuracy, *relevancy,* and *proper utilization* of such information in accordance with the requirements of this subchapter. 15 U.S.C. § 1681(b) (emphasis added)."

5. These allegations were made by the Guichards in paragraph 16 of their Class Action Complaint in *Guichard v. State Farm Fire and Casualty Co.,* Civ. A. 95–2963, 1995 WL 702510, a related action which caused the current action to be transferred to this section of court. The defendants in their memoranda have frequently relied on *Guichard* and other FCRA actions involving the plaintiffs at hand. The Court grants leave to plaintiffs to file the Guichard affidavit into the record.

putative class includes "all persons whose credit reports have been furnished to an insurance company during the period from April 2, 1995 to the present, by computer access, by defendants CSC Services, Inc., or Equifax Inc., or any of their subsidiaries, or by access to databases owned by any of them." This action was filed on April 2, 1997, and the applicable statute of limitations is two years. 15 U.S.C. § 1681p. The cause of action accrues at the earliest on the date of injury, which here, again at the earliest, would be the date on which the defendants released credit reports to an insurance company without the Section 1681e reasonable procedures in place. As the class includes only those plaintiffs whose reports were furnished from April 2, 1995, the class members' claims are not time-barred.

## V. Class Definition

■ As currently formulated, plaintiffs' class definition is too broad, as it is not tailored to the defendants' alleged violation, namely, their failure to observe reasonable procedures under Section 1681e(a) when issuing reports to insurance companies. District courts have wide authority to manage class actions by trimming down, limiting, or partially denying proposed classes, creating subclasses, and imposing conditions on class certification[6]. Accordingly, the Court trims down plaintiffs' class definition from

> all persons whose credit reports have been furnished to an insurance company during the period from April 2, 1995 to the present, by computer access, by defendants CSC Services, Inc., or Equifax Inc., or any of their subsidiaries, or by access to databases owned by any of them

to

> all persons whose credit reports have been furnished to an insurance company during the period from April 2, 1995 to the present, by computer access, in violation of 15 U.S.C. § 1681e(a), by defendants CSC Services, Inc., or Equifax Inc., or any of their subsidiaries, or by access to databases owned by any of them

## VI. Equifax's Motion for Summary Judgment

Defendant Equifax Inc. moves for summary judgment on the grounds that it has been improperly named as a defendant in this action. The proper defendant in the Equifax family of companies, if any, Equifax Inc. claims, is its subsidiary Equifax Credit Information Services.

Plaintiffs provide an exhibit of a credit report allegedly furnished by an Equifax company to an insurer which identifies the provider as "Equifax and affiliates."

The Court finds that at this point in time a question of material fact sufficient to defeat a motion for summary judgment exists as to whether Equifax Inc. is the proper defendant.

Accordingly,

IT IS ORDERED that plaintiffs' Motion to Certify Class is GRANTED, and that the Motion for Summary Judgment by Equifax Inc. is DENIED without prejudice to the right to reurge it at a later date.

---

6. *Slaughter v. Levine,* 598 F.Supp. 1035, 1041 (D.Minn.1984)(rev'd on other grounds).