**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

Consolidated Nos. 94-20930 & 95-20230

7547 PARTNERS, ON ITS OWN BEHALF AND ON BEHALF OF UNITHOLDERS OF
KELLEY OIL & GAS PARTNERS, LTD.,

Plaintiff-Appellant,

VERSUS

THEODORE J. FISTEK, LOUIS F. CAMARDELLA, ETHEL WEISHAUPT,

Plaintiffs-Appellees.
and

KELLEY OIL CORP., DAVID L. KELLEY, KELLEY OIL & GAS PARTNERS,
LTD., KEMPER SECURITIES, INC., JOE M. BRIDGES, BROMLEY DEMERRITT,
FAIR COLVIN, JR., WILLIAM J. MURRAY, ALAN N. SIDNAM, FRANK G.
LYON, RALPH P. DAVIDSON, and JOHN J. CONKLIN, JR.,

Defendants-Appellees.

Appeals from the United States District Court
For the Southern District of Texas

(H-94-CV-3378 & CA-H-94-3381)

April 29, 1997

Before GARWOOD, BARKSDALE, and DENNIS, Circuit Judges

DENNIS, CIRCUIT JUDGE.[*]

This appeal arises from the fallout of a consolidation of

---

[*] Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

defendant appellees, Kelley Oil and Gas Partners ("Kelley Partners"), and Kelley Oil Corporation ("Kelley Oil"). Kelley Partners was a publicly traded limited partnership. Its general partner was Kelley Oil. In the summer of 1994, Kelley Oil proposed the consolidation of Kelley Partners and Kelley Oil into a new corporation. Shortly after the terms of the proposal were announced, four groups of unitholders of Kelley Partners (Camardella, Weishaupt, Fistek, and 7547 Partners) filed separate actions in state court in Texas to enjoin the consolidation. Kelley Oil successfully removed all of the actions to federal court. Sometime thereafter, Kelley Oil began settlement negotiations with all four groups of unitholders. Eventually, all four actions were consolidated. By early November 1994, the Camardella, Weishaupt, and Fistek Partners, plaintiffs-appellees here ("settling plaintiffs"), informally agreed to a settlement with Kelley Oil. On March 3, 1995, the district court entered a final order and judgment approving the settlement and dismissing the suit. 7547 Partners have appealed the judgment contending that the district court lacked subject matter jurisdiction to issue a settlement order, that the 7547 Partners were denied due process, and that the settlement was unfair. We find the 7547 Partners' contentions unpersuasive and affirm the judgment of the district court.

## Background

Kelley Partners was a limited partnership engaged in the

development of oil and natural gas properties, acquisition of interests in additional producing properties and other related activities. Ownership interests in Kelley Partners were represented by units, which were publicly traded on the American Stock Exchange.[1] Kelley Partners' managing general partner was Kelley Oil and defendant appellee, David L. Kelley, the chairman and chief executive of Kelley Oil, was the special general partner of Kelley Partners. Kelley Oil was a publicly-traded corporation engaged primarily in managing, developing, acquiring and operating oil and gas properties. Other defendants-appellees in the case, Joe M. Bridges, Bromley DeMerritt, Fair Colvin, Jr., William J. Murray, Alan N. Sidnam, Frank G. Lyon, Ralph P. Davidson, and John J. Conklin, Jr. are Kelley Oil's remaining directors. Also a defendant-appellee in this action is Kemper Securities, Inc., a Delaware corporation that issued a fairness opinion pursuant to a consolidation or roll-up of the 1991 Development Drilling Program (1991 "DDP"), an oil and gas drilling limited partnership, into Kelley Partners.[2] The consolidation of the 1991 DDP was proposed

---

[1] As of September 30, 1994, according to Kelley Oil's proxy statement filed pursuant to Schedule 14a of the Securities Exchange Act of 1934, Kelley Partners' total partnership equity was over $74 million and its assets totaled $216 million; Kelley Oil's shareholder equity totaled $53 million and its assets were valued at $111 million.

[2] In October 1993, Kelley Partners filed a registration statement with the SEC covering a proposed exchange of units in Kelley Partners for interests in the assets and liabilities in the 1991 DDP. The fourth amendment to that registration statement was filed on August 17, 1994 and the registration statement became

3

by Kelley Oil. Kelley Oil was the majority shareholder of the 1991 DDP before the consolidation into Kelley Partners.

In early 1994, Kelley Oil's Board of Directors ("Board") began considering the consolidation of Kelley Oil and Kelley Partners. In May of 1994, the Board retained Smith Barney to serve as its financial advisor for the consolidation, and formed a special committee to determine whether the proposed consolidation was fair to the public unitholders. The non-management directors on the Board selected defendants-appellees Conklin and Davidson to serve on the special committee. Conklin and Davidson were non-management directors of Kelley Oil who owned significant interests in Kelley Partners.[3] The special committee hired its own financial and legal advisors who were different from the ones retained by Kelley Oil.

On August 24, 1994, Kelley Oil presented the special committee with a consolidation proposal ("Original Consolidation Proposal"). The Original Consolidation Proposal provided that unitholders of Kelley Partners, other than Kelley Oil ("public unitholders") would receive one share of common stock of the successor corporation for each unit owned in Kelley Partners. Shareholders of Kelley Oil common stock would receive 1.13 shares of common stock in the successor corporation for each share owned in Kelley Oil. The exchange ratios allocated 45% of the new corporation's voting stock

effective on August 24, 1994.

[3]Together they owned 121,669 units of Kelley Partners which constituted .52% of the outstanding units in Kelley Partners.

4

to the public unitholders and 55% to Kelley Oil shareholders. Additionally, public unitholders could elect to exchange 50% of their units for preferred stock of the successor corporation which would pay an 8% dividend and would automatically convert into common stock of the successor corporation after four years unless redeemed at the successor's option after three years.

The following week four separate suits were filed in state district court. The 7547 Partners filed a derivative action on August 26, 1994, seeking to enjoin the 1991 DDP roll-up and the Original Consolidation Proposal. The Weishaupt class action was filed on August 29, 1994, and sought the same relief as the 7547 Partners.[4] On August 30, 1994, the Fistek and Camardella groups filed class actions seeking to enjoin the Original Consolidation Proposal only. All four actions were later removed by Kelley Oil to the United States District Court for the Southern District of Texas and the Fistek, Camardella, and Weishaupt actions were voluntarily consolidated.

Beginning in late September 1994, counsel for and principals of Kelley Oil commenced settlement negotiations with all four plaintiffs and their lawyers and investment advisors. On October 25, 1994, face-to-face settlement negotiations were held between

---

[4]Weishaupt was the only plaintiff to name Kemper Securities, Inc., as a defendant. Weishaupt did not name the individual members of the Board of Directors of Kelley Oil as defendants. The other three plaintiffs named Kelley Oil, the individual members of the Board of Directors of Kelley Oil, and Kelley Partners as defendants.

Kelley Oil and its representatives and the settling plaintiffs and their representatives.[5]    Meanwhile, Kelley Oil negotiated separately with the special committee in an attempt to modify the Original Consolidation Proposal.   The above negotiations produced a revised consolidation proposal ("Revised Consolidation Proposal") which provided that the public unitholders in Kelley Partners would receive a 53% stake in the successor corporation instead of the 45% stake they would have received pursuant to the Original Consolidation Proposal.   Additionally, the Revised Consolidation Proposal contained a provision whereby Kelley Oil would not vote its units in Kelley Partners in the Kelley Oil/Kelley Partners consolidation, unless a majority of Kelley Partners's public unitholders approved the consolidation.[6]

Following the Revised Consolidation Proposal, the parties engaged in discovery.   On November 22, 1994, the settling plaintiffs filed an amended complaint that included class and derivative claims against defendants-appellees.   A hearing was held the next day concerning procedures relating to the proposed settlement set forth by the terms of the Revised Consolidation Proposal.   At the hearing, the district court entered an order approving the class certification for purposes of settlement and

_____

[5]The 7547 Partners and their representatives were invited, but refused to attend the October 25, 1994 negotiations.

[6]Kelley Oil owned approximately 16% of the units of Kelley Partners.

scheduled a fairness hearing for February 17, 1995 ("Scheduling Order"). Additionally, the Scheduling Order enjoined the 7547 Partners from commencing any other actions. Also at the hearing, Chief Judge Black, pursuant to Fed.R.Civ.Proc. 42, granted a motion to consolidate the 7547 Partners' action with the previously consolidated actions ("Consolidation Order"). Rather than file a motion to deconsolidate as Judge Black invited them to do, 7547 Partners filed an interlocutory appeal, assigned No. 94-20930, with this court contesting both the Consolidation and Scheduling Orders because of their vagueness and overbreadth. A different panel of this court decided that this appeal should be carried with the case.[7] Lastly, at the November 23, 1994, hearing the court ordered that notice of the action and of the proposed settlement evidenced by the terms of the Revised Consolidation Proposal be sent to all class members of all classes no less than 45 days before the fairness hearing set for February 17, 1995.

On February 7, 1995, at a special meeting called for the purposes of voting on the Revised Consolidation Proposal, Kelley Partners's public unitholders (non Kelley Oil unitholders) approved the Revised Consolidation Proposal by a margin of 71% for the consolidation to 28% against and 1% abstaining.[8]

_____

[7]The interlocutory appeal and the appeal of the final settlement order dismissing the case, assigned No. 95-20230, were consolidated by the Clerk of this Court.

[8]This outcome was subject to an aggressive proxy fight mounted by the 7547 Partners.

Pursuant to the Scheduling Order of November 23, 1994, a fairness hearing was held on February 17, 1995. All parties, including 7547 Partners attended the hearing and presented their arguments to the court. On March 3, 1995, the district court entered a final order and judgment which (1) granted leave *nunc pro tunc* for the filing of the amended complaint; (2) certified the consolidated cases as Rule 23(a), 23(b)(1)and Rule 23(b)(2) class actions and as a derivative action under Rule 23.1; and (3) approved the settlement in accordance with the terms of the Revised Consolidation Proposal and dismissed the action. 7547 appeals the final order and judgment.

## Standard of Review

The question of federal jurisdiction is subject to *de novo* review. *In re U.S. Abatement Corp.*, 39 F.3d 563, 566 (5th Cir. 1994). All other issues involving the approval of a settlement of a class action are governed by the abuse of discretion standard. *See Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983).

## Analysis

I.  Appeal No. 95-20230

A.  Jurisdiction

1.  Diversity of Citizenship

We find that the district court had jurisdiction over this action pursuant to Article III of the United States Constitution

and 28 U.S.C. § 1332. In cases that are removed to federal court from state court, such as this one, diversity of citizenship must exist both at the time of filing in state court and at the time of removal to federal court. *See, e.g., Coury v. Prot*, 85 F.3d 244, 249 (5th Cir. 1996). The lack of subject matter jurisdiction may be raised at any time during pendency of the case by any party or by the court. Fed.R.Civ.Proc. 12(h)(3). Moreover, the Supreme Court has held that a party cannot waive the defense and cannot be estopped from raising it. *E.g.*, *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978).

In order to determine whether diversity of citizenship exists as required by § 1332, we must ascertain the domicile of each party in all four separate actions when they were originally filed in state court.[9] Appellants, 7547 Partners, a Florida partnership, concede that there is complete diversity between themselves and Kelley Oil, the members of the Board of Kelley Oil, and Kelley Partners, the defendant-appellees named in the suit originally filed in state court. Likewise, there is no contention of improper

---

[9]In this case it is unnecessary to reexamine the domiciles of the parties at the time of removal because no changes occurred between the time the petitions were originally filed in state court and the time the defendants removed the actions to federal court, *i.e.*, no claims or parties were added and no one's domicile changed.

jurisdiction over the Fistek action because Fistek is a citizen of Ohio and the defendants are identical to the ones in the 7547 Partners action.[10]   However, for the purposes of determining diversity in the other actions the domiciles of the parties are the following: (1) Kelley Oil:  a Texas Corporation with its principal place of business in Texas; (2) Kelley Partners:  Kelley Partners is a nominal party with no real interest in the dispute.  *See, e.g., Navarro Savs. Ass'n v. Lee*, 446 U.S. 458 (1980); *Wolff v. Wolff*, 768 F.2d 642 (5th Cir. 1985).  Therefore, in determining whether complete diversity exists Kelley Partners will be ignored. (3) Defendants David L. Kelley, Joe M. Bridges, Fair Colvin, Jr., and William J. Murray are Texas citizens.  (4) Defendants Bromley DeMerritt and Frank G. Lyon are citizens of  Connecticut; (5) Defendant John J. Conklin is a citizen of New Jersey.  (6) Defendant Ralph P. Davidson is a citizen of the District of Columbia; (7) Defendant Alan N. Sidnam is a citizen of New York.

7547 Partners do contend however, that complete diversity is lacking in the Weishaupt and Camardella actions.  As for the Weishaupt action, the appellant's contention is disingenuous. Weishaupt is a citizen of New York who sued Kelley Oil, a Texas Corporation, David L. Kelley, a Texas citizen, and Kemper

---

[10]For the purposes of class actions, the citizenship of the representative plaintiff and not of all class members is dispositive.  *Snyder v. Harris*, 394 U.S. 332, 340 (1969); WRIGHT *ET AL.*, FEDERAL PRACTICE AND PROCEDURE § 3606, at 424 (2d ed. 1984).

Securities, Inc., a corporation registered in Delaware with its principal place of business in Illinois. Obviously, there is complete diversity of citizenship. As noted above, in cases that have been removed to federal court diversity of citizenship is required at two specific time periods only, when the action is originally filed in state court and at the instant the case is removed. If diversity is established at the commencement and removal of the suit, it will not be destroyed by subsequent events. *Freeport-McMoRan, Inc. v. K N Energy, Inc.,* 498 U.S. 426 (1991) (the addition or substitution of a nondiverse party pursuant to Fed.R.Civ.Proc. 25(c) does not destroy jurisdiction of the court). *Cf. Wichita R.R. & Light Co. v. Public Util. Comm'n of Kansas,* 260 U.S. 48, 54 (1922); *Grisham Park Community Park Organization v. Howell*, 652 F.2d 1227 (5th Cir. 1981) (a subsequent change in citizenship of a party does not divest a court of jurisdiction). *See also* 1 J. MOORE, MOORE'S FEDERAL PRACTICE, § 0.74[1] (1996). The consolidation that occurred after removal of the four actions to federal court is a "subsequent event" and as such has no effect on the court's jurisdiction.

As for the Camardella action, the appellant's argument that complete diversity is lacking because plaintiff-appellee Camardella and defendant-appellee Alan N. Sidnam are New York citizens is superficial. In the original state court action Camardella named Kelley Oil, Kelley Partners, and the members of the Board of

11

Directors of Kelley Oil, including New York citizen Alan N. Sidnam as defendants. Nevertheless, the removal of the Camardella action was proper on the grounds of diversity of citizenship because Sidnam, the only "non-diverse" defendant, was a person whose citizenship should not have been considered for the purposes of determining diversity of citizenship.

The law in this circuit is that if a plaintiff cannot establish a cognizable cause of action against a non-diverse defendant in state court that defendant's citizenship will be disregarded for the purposes of diversity of citizenship. *Burden v. General Dynamics Corp.*, 60 F.3d 213, 217 (5th Cir. 1995). Analogously, in determining whether a party has been fraudulently joined to defeat diversity jurisdiction "[a] court is to pierce the pleadings to determine whether, under controlling state law, the nonremoving party has a valid claim against the non-diverse parties." *LeJeune v. Shell Oil Co.,* 950 F.2d 267, 271 (5th Cir. 1992) (citing *Carriere v. Sears, Roebuck and Co.*, 893 F.2d 100 (5th Cir.), *cert. denied*, 111 S.Ct. 60 (1990)). *See also*, WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 3602 at 375 (2d ed. 1984). Therefore, it must be determined whether an action would lie against Sidnam under Texas law.

Sidnam's relationship to Camardella is as follows: Sidnam is a non-management member of the Board of Directors of the general partner (Kelley Oil), of a limited partnership (Kelley Partners) of

12

which the plaintiff is a limited partner. In *Grierson v. Parker Energy Partners*, 737 S.W.2d 375 (Tex. App.-Houston [14th Dist.] 1987, no writ), a similar relationship existed between Grierson, president of a corporation, Parker Energy Technology Corporation, that was the general partner of Parker Energy Partners. Parker Energy Partners sued the corporation and Grierson for breaching fiduciary duties owed to the partnership. First, the Texas court acknowledged that under Texas Law, when a corporation serves as a general partner it owes fiduciary duties to the partnership and the limited partners. *Grierson*, 737 S.W.2d at 377 (citing Tex.Civ.Stat.Ann. art. 6132a, §10 (Vernon 1970); Tex.Civ.Stat.Ann. art. 6132b § 21 (Vernon 1970)). However, the court recognized that corporate officers such as members of the Board of Directors, only owe fiduciary duties to the shareholders of the corporation they are elected to represent and to the corporation itself and not to third parties such as a partnership and its limited partners, with one exception. *Id*. (citing *Castleberry v. Branscum*, 721 S.W.2d 270, 271-72 (Tex. 1986); *Bell Oil & Gas Co. v. Allied Chemical Corp.*, 431 S.W.2d 336, 340 (Tex. 1968)). The exception is that corporate officers may not **knowingly** participate in the breach of a fiduciary duty toward third parties even if the act is committed while serving as an agent of the corporation. *Id*. at 377-78 (emphasis added). In *Grierson*, the court could not find any proof in the pleadings and evidence indicating that Grierson knowingly

13

participated in the breach of fiduciary duties toward the partnership and accordingly held that Grierson was not liable for breach of a fiduciary duty.

Therefore as mandated by Texas law, we must determine whether Sidnam knowingly participated in the breach of fiduciary duties owed to Kelley Partners. Camardella's complaint does not allege any facts demonstrating that Sidnam knowingly participated in Kelley Oil's breach of fiduciary duties. Moreover, the record does not indicate that Sidnam knowingly participated in Kelley Oil's alleged breach of fiduciary duties. We thus conclude that under Texas law, Camardella could not have sustained a cause of action against Sidnam and consequently Sidnam's citizenship will not be considered for the purposes of ascertaining diversity of citizenship.

## 2. Amount in Controversy

Our analysis is not at an end in determining whether the court properly exercised jurisdiction until we determine that the jurisdictional amount is satisfied. In addition to requiring that the parties to an action be diverse, 28 U.S.C. § 1332 necessitates that the amount in controversy be more than $50,000. This determination is more nebulous in cases like the present which primarily seek injunctive relief. "The amount in controversy, in an action for declaratory or injunctive relief, is the value of the right to be protected or the extent of the injury to be prevented."

14

*Webb v. Investacorp, Inc.*, 89 F.3d 252, 257 (5th Cir. 1996)(quoting *Leininger v. Leininger*, 705 F.2d 727 (5th Cir. 1983)).  The value of the right sought to be protected, by each of the four actions filed, was to preserve Kelley Partners, an entity with $216 million in assets, from being consolidated with Kelley Oil.  There is no need to do empirical calculations or seek evaluations from investment bankers to determine the financial impact of the consolidation because it is obvious that the value of enjoining a merger of such large entities easily exceeds $50,000.  Accordingly, the district court properly exercised jurisdiction over the parties pursuant to 28 U.S.C. 1332.

B.  7547 Partners' Due Process Arguments

1.  Was the Consolidated Class Action Properly Certified Under Sections (b)(1) & (b)(2) and Not Under (b)(3) of Fed.R.Civ.Proc. 23?

In order to systematically address whether the appellant was denied due process because it was not allowed to opt out and was not given adequate notice, we must first determine whether this action was properly certified under Rule 23(b)(1)&(b)(2) and not under 23(b)(3).  It is not contested that this action may be certified pursuant to 23(b)(1).  Rule 23(b)(1) permits certification of a class action if the prosecution of separate actions might result in inconsistent or varying adjudications that

15

would "establish incompatible standards of conduct for the party opposing the class." Fed.R.Civ.Proc. 23(b)(1)(A); or if prosecutions of separate actions "would create a risk of . . . adjudications with respect to individual members of the class which would . . . be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests." Fed.R.Civ.Proc. 23(b)(1)(B). Both provisions of Rule 23(b)(1) obviously apply to the present case.

Appellant does contest, however, that the class should not have been certified under 23(b)(2). Rather, it asserts that the class action should have been certified under 23(b)(3). Rule 23(b)(2) provides that a class action is appropriate when "the party opposing the class has acted or refused to act on grounds generally applicable to the class," **and** the representatives are seeking "final **injunctive relief** . . . " (emphasis added). The basis for the appellant's contention is that the relief sought by the settling plaintiffs was primarily for money damages thereby making Rule 23(b)(2) inapplicable. This contention is misplaced. It is true that the settling plaintiffs in the amended complaint did assert a claim for incidental money damages. However, requesting incidental money damages does not preclude the certification of this case under Rule 23(b)(2) if the primary relief sought is injunctive. *Forbush v. J.C. Penney Co., Inc.*, 994

16

F.2d 1101, 1105 n.3 (5th Cir. 1993); *Parker v. Local Union No. 1466*, 642 F.2d 104, 107 (5th Cir. 1981); *Johnson v. General Motors Corp.*, 598 F.2d 432, 437 (5th Cir. 1979); *Jones v. Diamond*, 519 F.2d 1090, 1100 n.17 (5th Cir. 1975) ("So long as the predominant purpose of the suit is for injunctive relief, the fact that a claim for damages is also included does not vitiate the applicability of 23(b)(2).") The primary relief sought in the present case was undoubtedly to enjoin the consolidation of Kelley Partners and Kelley Oil. All four of the original actions filed in state court primarily sought injunctive relief. Likewise, in the settling plaintiffs' amended complaint, the first type of relief sought is injunctive. The prayer for incidental monetary damages follows five paragraphs after the claim for injunctive relief. Therefore, we find that the district court did not abuse its discretion in finding that the action was one primarily seeking injunctive relief and certifying the class under Rules 23(b)(1)&(b)(2).

Moreover, we also find that the district court did not abuse its discretion in declining to certify this case under Rule 23(b)(3). "Unlike subdivisions (b)(1) and (b)(2), which provide for the bringing of a class action based on the type or effect of the relief being sought, Rule 23(b)(3) authorizes a class action when the justification for doing so is the presence of common questions of law or fact and a determination that the class action is superior to other available methods for resolving the dispute

17

fairly and efficiently." 7A WRIGHT et al., FEDERAL PRACTICE AND PROCEDURE § 1777 (2d ed. 1986).[11] However, if a class action can be certified under 23(b)(2), then it should not also be certified under 23(b)(3). *Bing v. Roadway Express, Inc.*, 485 F.2d 441, 447 (5th Cir. 1973)("Although this suit arguably could have been brought as a (b)(3) action, (b)(2) actions generally are preferred for their wider res judicata effects."); *DeBoer v. Mellon Mort. Co.*, 64 F.3d 1171 (8th Cir. 1995), *cert denied, sub nom. Crehan v. DeBoer*, 116 S.Ct. 1544 (1996) ("When either subsection (b)(1) or (b)(2) is applicable, however, (b)(3) should not be used, so as to avoid unnecessary inconsistencies and compromises in future litigation."); 7A WRIGHT *et al*. FEDERAL PRACTICE AND PROCEDURE § 1775 at 491.

A significant effect of certifying an action pursuant to 23(b)(1) and (b)(2) and not (b)(3) is that class members have no

---

[11]Rule 23(b)(3) states:

[An action may be maintained as a class action if] the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

opt out rights. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811 n.3 (1985) (Opt out rights are "limited to those class actions which seek to bind known plaintiffs concerning claims wholly or predominantly for money damages."); *Kincade v. General Tire & Rubber Co.*, 635 F.2d 501, 507 (5th Cir. 1981)("For several reasons we  find that the right to opt out, which is denied when a Rule 23(b)(2) case is  tried, also need not be provided when such a case is settled."). *See also In re Asbestos Litigation*, 90 F.3d 963, 987 & n.16 (5th Cir. 1996).

Another effect of not being certified under 23(b)(3)is that notice need not comport with the requirements of Fed.R.Civ.Proc. 23(c)(2), which requires that notice be the "best notice practicable under the circumstances. . . ." Instead, for classes certified under sections (b)(1) or (b)(2) of Fed.R.Civ.Proc. 23, notice is within the complete discretion of the court. Fed.R.Civ.Proc. 23(d)(2)("notice be given in such manner as the court may direct...."). Here, the Scheduling Order issued by the district court on November 23, 1994, provided that notice be given to members of the class:

> No later than 45 days prior to the date of the Settlement Hearing [February 17, 1995], Kelley Oil, at its expense shall mail, by first class mail, postage prepaid, a Notice of Pendency of Class Actions, Proposed Settlement of Class and Derivative Actions and Settlement Hearing . . . to all Class members and current Unit owners shown on the transfer records maintained by or on behalf of Kelley [Partnership] to have been record or beneficial holders of the Units .... Upon request by a record holder who is a Class member or current Unit owner, Kelley Oil shall provide, at its expense,

19

additional copies of the Notice to record holders to be forwarded to beneficial owners who are Class members or current Unit holders who were not mailed the Notice, or alternatively, shall mail the Notice to such beneficial owners identified by record holders for this purpose....

The district court found that Kelley Oil complied with the above:

[T[he prescribed notice was sent on December 29, 1994, by first class mail, postage prepaid, to all record holders of units in Kelley Partners during the period of time from August 25, 1994, through December 23, 1994. Pursuant to the express terms of the notice, all record holders who were not beneficial owners were instructed to transmit the notice to the beneficial holders of units in Kelley Partners. Furthermore, an additional 14,091 copies of the notice were mailed or delivered on December 29, 1994, to all persons and institutions which held units of Kelley Partners on behalf of the beneficial owners during the period of time from August 25, 1994, through the date of the mailing, who were also instructed to forward the notice by first class mail at Kelley Oil's expense to the beneficial owners.

The appellant makes two contentions on appeal: (1) the way in which notice was sent to the beneficial owners who were not owners of Kelley Partners units as of December 23, 1994, was improper; and (2) notice by publication would have been preferable. We find both of these contentions unpersuasive. We conclude that the district court did not abuse its discretion in finding that mailing or hand delivering 14,091 copies of the notice to the proxy departments of all banks, brokers, nominees, and other institutions with instructions to forward to beneficial owners of Kelley Partners units at Kelley Oil's expense was sufficient. The record indicates that at least 212 institutions holding in excess of 14.7 million units received copies of the notice. One institution, whose

20

clients held approximately three-fourths of all units, attested that it mailed 9320 copies of the notice to all of their clients' beneficial holders of units in Kelley Partners. Additionally, the appellant has not submitted affidavits from any of Kelley Partners unitholders attesting to the fact that they did not receive notice; appellant merely speculates that some beneficial owners may not have received notice.

We also find that the district court did not abuse its discretion in failing to require that notice be published. Appellant adduces no proof that publication of the class action and possible settlement would have provided more unitholders with notice. As one commentator points out individual notices "are [generally] more effective in eliciting responses than are published notices." NEWBERG & CONTE, NEWBERG ON CLASS ACTIONS, § 8.38 (3d ed. 1992). The same commentator, citing empirical data, notes that in contrast, "the average citizen will not see or read a class settlement notice, even when it is published (usually in fine print) on the financial pages of a newspaper such as the *New York Times or Wall Street Journal* or in papers of general circulation, as is the common practice." *Id*.

2. Was the Permanent Injunction in the District Court's Final Order and Judgment Overbroad?

Appellant asserts without any support, that the district court abused its discretion in releasing all present and future claims

21

against defendants in its final order and judgment. We find the appellant's assertion unpersuasive and that the district court did not abuse its discretion in enjoining all present and future claims relating to the subject matter of the settled actions or the consolidated complaint against defendant-appellees. Although the case involved a bankruptcy reorganization instead of a consolidation, we find the reasoning of the Second Circuit persuasive in finding that the district court did not abuse its discretion in this case:

> In turn, the injunction [against future claims] is a key component of the Settlement Agreement. As the district court noted, the injunction limits the number of lawsuits that may be brought against Drexel's former directors and officers. This enables the directors and officers to settle these suits without fear that future suits will be filed. Without the injunction, the directors and officers would be less likely to settle. Thus, we hold that the district court did not abuse its discretion in approving the injunction.

*In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 293 (2d Cir. 1990).

Likewise, the injunction in the present case is important to the settlement in that the defendant-appellees were able to settle the case without the fear of future litigation. By the same token, the district court did not abuse its discretion in issuing the consolidation and scheduling orders.

3. Were the Unitholders Adequately Represented?

Similarly, appellant makes groundless assertions that the district court abused its discretion in finding that the

22

unitholders were adequately represented. In this circuit representation is adequate if the representatives have common interests with the unnamed members of the class and the representatives vigorously prosecute the interest of the class through qualified counsel. *Gonzales v. Cassidy*, 474 F.2d 67 (5th Cir. 1973). There are no facts in this case that indicate that the above criteria were not met. Obviously all unitholders were interested in seeking the best possible return on their investment; either by maintaining their position in Kelley Partners or by receiving the greatest interest possible in the successor corporation. Additionally, each representative retained competent counsel whose vigorous prosecution led to the decidedly improved terms of the Revised Consolidation Proposal.

C. Did the District Court Abuse its Discretion in Approving the Settlement as Fair, Reasonable, and Adequate?

A district court's determination that a settlement should be approved as fair, reasonable, and adequate must be upheld unless it is found to have constituted a "clear abuse of discretion." *Ruiz v. McKaskie*, 724 F.2d 1149, 1152 (5th Cir. 1984). Appellant cites several errors made by the district court allegedly constituting clear abuses of discretion. None, however, are persuasive.

First, the appellant asserts that the settlement was a product of fraud or collusion in that the defendant-appellee, Kelley Oil, and the settling plaintiffs systematically excluded 7547 Partners

23

from the litigation that resulted in the settlement. Such a claim is unfounded because at the fairness hearing on February 7, 1995, counsel for 7547 Partners unambiguously stated that 7547 Partners voluntarily excluded themselves from the settlement negotiations:

> Mr. Pecht [counsel for Kelley Oil] never intended to cut me out of any settlement. He was more than happy that I participate. But I would not participate - I could not in good consciousness [sic] participate at the levels I knew the other plaintiff's [sic] would accept.

Next, appellant contends that the discovery conducted failed to establish the propriety of the settlement and that they were deprived of discovery regarding the settlement negotiations. Appellant cites no authority in support of this contention. On the contrary, it has been held in the class action context that formal and/or voluminous discovery is unnecessary and that determining whether or not to grant discovery requests is well within the discretion of the court. *Cotton v. Hinton*, 559 F.2d 1326, 1331–1333 (5th Cir. 1977).[12] Accordingly, we conclude that the district

---

[12]In *Cotton*, this court stated:

> It is true that very little formal discovery was conducted and that there is no voluminous record in this case. However, the lack of such does not compel the conclusion that insufficient discovery was conducted. At the outset, we consider this an appropriate occasion to express our concern over the common belief held by many litigators that a great amount of formal discovery must be conducted in every case.

> Discovery in its most efficient utilization should be a totally extra-judicial process, informality in the discovery of information is desired. It is too often forgotten that a conference with or a telephone call to opposing counsel may often achieve the results sought by formal discovery.

court did not abuse its discretion in denying 7547 Partners discovery requests and in approving the settlement based on the discovery conducted.

After full consideration, we find the appellant's remaining contentions regarding the fairness, reasonableness and adequacy of the settlement to be manifestly without merit.  Accordingly, we conclude that the district court did not abuse its discretion in finding that the settlement was fair, reasonable, and adequate to all parties.

## Conclusion

For the foregoing reasons, the final judgment and order of the district court approving the settlement and dismissing the case is AFFIRMED.  Motions denied as moot.

25